# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| HENRY HICKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05-0035-CV-W-FJG |
| | ) | |
| PRIDE MOBILITY PRODUCTS | ) | |
| CORPORATION, and THE SCOOTER | ) | |
| STORE-KANSAS CITY, L.L.C. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Currently pending before the Court is Defendant's Motion to Strike plaintiff's Proffered Expert Testimony (Doc. # 71), Plaintiff's Motion for Leave to File Out of Time (Doc. # 73), Defendant's Motion for Summary Judgment (Doc. # 81) and Defendant's Motion in Limine (Doc. # 111).

### I. BACKGROUND

On October 22, 2003, a fire occurred at the home of plaintiff Henry Hickerson. As a result of the fire, Mr. Hickerson's wife died and he lost his home. At the time of the fire, Mr. Hickerson and his wife owned a motorized chair, know as the Pride Jet 2 Power Chair. Defendant Pride Mobility manufactured the chair and plaintiffs purchased the chair from the Scooter Store. Plaintiff alleges that the motorized chair caused the fire.

On October 23, 2003, Clarence M. Kelley & Associates received a request from Armed Forces Insurance Company to conduct a fire cause and origin investigation into the fire that had occurred at plaintiff's home. William L. Schoffstall was the individual

who conducted this investigation. In his report, Mr. Schoffstall concluded that the fire was undetermined. He believed that it started in the living room near the west end of the structure. He stated that the only source of ignition in this area was the scooter and with the damage found to the wires of the unit, it could not be ruled out as the source of the fire. Mr. Schoffstall also stated that the potential for subrogation was present if a laboratory could identify the manufacture of the scooter and the model and also confirm that a failure in the scooter had occurred.

On November 18, 2004, Plaintiff filed a six count Petition in state court alleging Count I-Strict Liability-Defective Design and Manufacture; Count II - Strict Liability Failure to Warn; Count III - Breach of Implied Warranty of Fitness; Count IV - Breach of Implied Warranty of Merchantability; Count V -Negligent Design, Manufacture and Failure to Warn; Count VI -Wrongful Death and Survival Claim. Defendant subsequently removed the case to federal court on January 11, 2005.

## II. STANDARD

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court interpreted the requirements of Federal Rule of Evidence 702 as they related to expert testimony. In <u>United States v. Vesey</u>, 338 F.3d 913, 916-17 (8th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1202 (2004), the Court stated:

> Rule 702 requires the trial judge to act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. See <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court is granted broad discretion in its determination of reliability. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence, see <u>Arkwright Mut. Ins. Co. v. Gwinner Oil Co.</u>, 125 F.3d 1176, 1183 (8th Cir. 1997). Expert testimony should be admitted if [1] it is based on sufficient facts, [2] it " is the product of reliable principles and methods,"

and [3] "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702; see also General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

Vesey, 338 F.3d at 916-17.

### III. DISCUSSION

**A. Motion to Strike**

The Court will address defendant's Motion to Strike Mr. Schoffstall first as this is also one of the basis for the Summary Judgment Motion. Before delving into the substance of defendant's Motion, the Court must first address a procedural issue. Defendants initially filed their Motion to Strike on June 30, 2005. Plaintiff's response was due on July 15, 2005. Plaintiff did not file a response, nor request an extension of time before the expiration of this deadline. On August 9, 2005, plaintiff filed a Motion for Leave to File Suggestions in Opposition to the Motion to Strike Out of Time. Plaintiff states that due to an oversight, the Motion to Strike was not printed or for some other reason was lost in transit. Defendants oppose plaintiff's Motion for Leave to File out of time arguing that attorney oversight or neglect does not demonstrate good cause. Although the Motion to Strike may not have reached plaintiff counsel's desk, that is no excuse for not regularly monitoring the electronic docket sheet. Surely, plaintiff's counsel had an occasion to check the electronic docket sheet between June 30 and August 9. The Court agrees that plaintiff's reason for a delay does not demonstrate good cause. However, as this was a one time occurrence and was not part of a pattern of overall disregard for the Scheduling Order deadlines, the Court will **GRANT** plaintiff's Motion for Leave to File Out of Time (Doc. # 73) and will address the merits of the Motion.

Plaintiff designated Mr. Schoffstall as their only expert witness. In a letter to

plaintiff's counsel, Mr. Schoffstall states that he conducted the fire cause and origin investigation on October 23, 2003 and that he prepared the attached report based on his examination. Mr. Schoffstall states that this report contains all opinions to be expressed and the bases and reasons for those opinions. He also attached a copy of his curriculum vitae which identifies him as a certified fire investigator and a former firefighter.

Defendants move to strike Mr. Schoffstall as an expert witness for two reasons: 1) Lack of Qualifications to Give an Opinion Regarding Product Defect and 2) Mr. Schoffstall's Hypothesis that the Chair Was Defective Was Speculative and Untested.

**1. Qualifications to Give An Opinion Regarding Defect**

Defendants state that it is uncontroverted that Mr. Schoffstall has no experience, expertise, skill or training in product design or development or manufacture generally and specifically has no skill, experience, expertise or specialized knowledge regarding power chairs, motorized wheelchairs or electric scooters. Indeed his curriculum vitae indicates that his specialization is fire investigations. He began his employment with Clarence M. Kelley on August 2001. Prior to that he served as a Reserve Lieutenant and Reserve Captain for the Raytown Fire Protection District before becoming a full time fire fighter in 1991. In 1999 he was assigned to the Fire Investigation Unit. Defendants state that lack of qualifications has frequently been held grounds for the exclusion of proposed expert testimony in the Eighth Circuit.

In <u>Weisgram v. Marley Company</u>, 169 F.3d 514 (8th Cir. 1999), the Eighth Circuit found that it was error to allow the fire investigator to testify that the fire had started because there was a malfunction in a baseboard heater. In that case, the fire investigator admitted that he was not an electrical engineer and that he did not know

4

what happened with the heater, but the district court allowed him to testify that he believed there had been a runaway of the heater. The Eighth Circuit noted that "although [the fire investigator] clearly was qualified as a fire cause and origin expert, there is no question that he was not qualified to offer an opinion that the Weisgram heater malfunctioned and he should not have been permitted to do so." Id. at 518. The Court continued:

> Freeman's qualification as a fire investigator did not give him free rein to speculate before the jury as to the cause of the fire by relying on inferences that have absolutely no record support. No foundation was established for Freeman to testify to the extent he did, and the court abused its discretion in allowing the jury to hear this testimony.

Id. at 519.

Similarly, in Torske v. Bunn-O-Matic Corp., No. A4-03-21, 2004 WL 1717649, (D.N.D. July 28, 2004), the Court in ruling on a motion in limine stated:

> In this case, there is no question that Dodson has extensive experience and training as a fire scene investigator. He is certainly qualified as an expert in fire investigations. Whether Dodson's expertise and training extends to the design, construction, and manufacturing of coffee makers is unclear at this stage. . . . However, it is clear that a competent and qualified cause-and-origin expert in a fire case may opine on the cause of the fire, and may also rely upon reasonable inferences as to the cause of the fire, if there is a reasonable basis in the record to support such an opinion. Fire cases are unique, and theories of causation often depend on circumstantial evidence and reasonable inferences to be drawn from the evidence presented at trial. It is premature at this stage for the Court to wholly exclude Dodson's opinions as to cause and origin. If there is a reasonable, factual basis in the record to support Dodson's opinion on the cause and the origin of the fire, his opinion will be admissible at trial. If not, his opinion will be excluded under Weisgram.

Id. at * 3.

### 2. Lack of Reliability and Trustworthiness of Plaintiff's Proposed Expert Testimony

Defendants second argument is that Mr. Schoffstall's theory that the power chair

5

Case 4:05-cv-00035-FJG   Document 115   Filed 02/07/06   Page 5 of 13

caused the fire is based on his examination of the burn patterns and the fact that the chair was located in the middle of the burn pattern. He also stated in his report that he discounted various other possible sources and then concluded that the scooter could not be ruled out as the source of the fire. He stated in his report that the scooter "could not be ruled out as the source of the fire." However, "[i]n the professional opinion of this investigator, this fire is classified as undetermined." He stated that there was a potential of subrogation if a laboratory could "confirm that a failure in the scooter had occurred."

Defendants state that by Schoffstall's own admission, testing could have been conducted to confirm if there was a defect in the chair, but instead he took no actions to conduct or arrange for the testing of the scooter. Secondly, defendants state that Schoffstall does not even suggest that his hypothesis is valid, as he concludes that the cause of the fire is undetermined. Thus, defendants state this hypothesis has not been subjected to peer review, the known rate of error is undetermined and his concept has not been shown to be generally accepted in the community. He has not identified *any* defect in the power chair, has not proposed any alternative designs and has not designed or even suggested any alternative designs. Defendants also note that Schoffstall has not ruled out other possible causes of the fire. The plaintiff himself admitted that he smoked a cigarette the evening before the fire occurred. Additionally, all the other electrical items located in the home were destroyed by plaintiff before they could be examined. Finally, there is no evidence that the Power Chair was even plugged in for recharging the night before the fire. Defendants assert that Schoffstall's causation opinions are plainly speculative and have no support in the record. Defendants argue that Schoffstall's opinions about fire causation and/or defect do not comply with Fed.R.Evid. 702 because they are not "based upon sufficient facts or data"

and they are not the product of "reliable principles and methods."

Plaintiff responds to defendants arguments by stating that Mr. Schoffstall has been designated by plaintiff to offer testimony regarding the cause and origin of the fire and he has not been designated to discuss electricity or the mechanics of the defendant's products. Plaintiff states Mr. Schoffstall used the burn patterns on the floor to determine the location of the fire origin. He also ruled out other possible sources of ignition by examining appliances and internal structural wiring, looking for signs of faulting. Plaintiff states that Mr. Schoffstall also examined the one source of ignition within the area where he believed the fire started and found that the defendant's scooter showed signs of faulting. Plaintiff states that Mr. Schoffstall's proffered testimony is sufficient to allow the jury to infer that the scooter was the cause of the fire and that the scooter was defective.

Plaintiff relies on the case of Fain v. GTE Sylvania, Inc., 652 S.W.2d 163 (Mo.App. 1983) to support the argument that a product liability case can be presented to the jury relying on circumstantial evidence and the testimony of a cause and origin expert only. In that case, the television set was completely destroyed and could not be examined or tested. The Court in that case found:

> [t]he jury could similarly infer that the television set was defective, even without proof that some specific component of the set was defective. Although the mere fact of an accident, standing alone, does not generally make out a case that a product is defective, common experience tells us that some accidents do not ordinarily occur in the absence of a defect and in those situations the inference that a product is defective is permissible.

Id. at 165. However, the Court in Truck Insurance Exchange v. MagneTek Inc., 360 F.3d 1206 (10th Cir. 2004), found Fain distinguishable because in Fain, the product at issue, the television, was destroyed, whereas in Truck Insurance the product had not

7

been completely destroyed and was available for testing.

In the instant case, it is unquestioned that Schoffstall has extensive experience in investigating and identifying the cause and origin of fires. If that is all that he was to testify to, then his testimony would be permissible. However, unlike the Torske case where it was unclear whether the expert had any experience with the design and manufacturing of coffee makers, in this case it is clear that Mr. Schoffstall has no experience regarding the design, manufacture, construction or operation of motorized wheelchairs or electric scooters.

It is also clear that he cannot testify that the defendant's power chair was the cause of the fire. The Court cannot allow Mr. Schoffstall to simply rely on circumstantial evidence to conclude that because the power chair was in the area where the fire originated, then the chair must have caused the fire. Plaintiff's rely heavily on the Fain case for this proposition. However, what plaintiff does not recognize or even acknowledge is that this case was decided ten years before the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). This case significantly changed the rules relating to expert testimony. In Smith v. Conair Corp., No. 8:03CV277, 2005 WL 2488441 (D. Neb. Oct 7, 2005), the Court stated:

> In light of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), this court must screen proffered expert testimony for relevance and reliability. . . . Serving in the role of gatekeeper, the court ensures that a particular expert has sufficient specialized knowledge to assist jurors, and limits such testimony so that it remains within the scope of the witnesses' established expertise. . . . A reliable opinion must be based on scientific methodology, not subjective belief or unsupported speculation. . . . Furthermore, the expert's information or opinion must "assist" the trier of fact to understand or determine a fact in issue.

Id. at * 2 (internal citations omitted). In Wagner v. Hesston Corp., No. Civ.03-4244

(JNE/JGL), 2005 WL 1540135 (D.Minn. June 30, 2005), the Court stated that an expert's testimony must meet three prerequisites to be admissible under F.R.E. 702:

> First, evidence based on scientific, technical or other specialized knowledge must be useful to the fact-finder in deciding the ultimate issue of fact. [I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case. . . . Second, the proposed expert must be qualified. . . . Third, the proposed evidence must be reliable. . . .
> In determining the reliability of expert testimony, a court should consider, among other factors: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. . . . These factors, however, are not exclusive, and a trial court is left with great flexibility in adapting its analysis to fit the facts of each case.

Id. at *2 (internal citations and quotations omitted).

In the instant case, specialized knowledge would no doubt be useful to the jury in determining whether the defendant's chair was defective. With regard to the second question, as discussed above, Mr. Schoffstall is qualified as a cause and origin expert, but he is not qualified as an expert with regard to power chairs, electric scooter or electric wheelchairs. Finally, the Court finds that Mr. Schoffstall's testimony that the power chair was the source of the fire is unreliable because he conducted absolutely no testing of the subject chair, even though the chair was available for testing and in fact was tested by defendant's experts. Obviously, if he did no testing it could not be subject to peer review, there is no known rate of error and the theory cannot be accepted. Thus, the Court concludes that Mr. Schoffstall's testimony is limited only to his report and observations he made at the scene of the fire. Defendant's Motion to Strike Mr. Schoffstall's opinion is therefore **GRANTED IN PART** and **DENIED IN PART** (Doc. # 71). Mr. Schoffstall will not be permitted to offer his opinion that the defendant's Power Chair caused the fire which occurred at plaintiff's home on October 22, 2003.

9

**B. Motion for Summary Judgment**

Defendants move for Summary Judgment on two grounds: 1) the absence of admissible expert testimony regarding fire causation and product defect entitles defendants to judgment as a matter of law and 2) the Court should dismiss plaintiff's case as an appropriate sanction for plaintiff's misconduct in allowing material evidence to be destroyed.

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

Defendants state that under Missouri products liability law, two essential elements of a plaintiff's claim are that the product at issue was in a defective condition

10

that made it unreasonably dangerous when put to a reasonably anticipated use and that plaintiff was damaged by the defective condition that existed when the product was sold. (Defendant's Suggestions, p. 12), citing Rauscher v. General Motors, 905 S.W.2d 158, 160 (Mo.App. 1995) and Duke v. Gulf & Western Manufacturing Co., 660 S.W.2d 404, 409-10 (Mo.App. 1983).

In the instant case, plaintiff has asserted six claims: Count I - Strict Liability - Defective Design and Manufacture; Count II - Failure to Warn; Count III - Breach of Implied Warranty of Fitness; Count IV- Breach of Implied Warranty of Merchantability; Count V - Negligent Design, Manufacture and Failure to Warn; and Count VI- Wrongful Death and Survival Claim. In Pro Service Automotive, L.L.C. v. Lenan Corp., No. 04-587-CV-GAF, 2005 WL 3371054 (W.D.Mo. Dec. 12, 2005), the Court observed:

> To recover under a theory of strict liability, the Plaintiffs must prove that the [product] was in a defective condition unreasonably dangerous when put to a reasonably anticipated use. MAI 25.04 (West 2002)(Verdict Director -Strict Liability-Product Defect). A claim for implied warranty requires the Plaintiffs to prove that the [product] was not free from defects, but rather was defective, at the time the Defendant sold the product to the Plaintiffs. See MAI 25.03 (West 2002)(Verdict Director-Breach of Common Law Implied Warranty of Fitness for a Particular Purpose Under Uniform Commercial Code; MAI 25.08 (West 2002) (Verdict Director - Breach of Implied Warranty of Merchantability Under Uniform Commercial Code). Therefore, to recover on these claims, the Plaintiffs must prove that the [product] was defective, either as manufactured or designed.

Id. at *11 (internal quotations omitted).

To recover under a Negligent Design, Manufacture and Failure to Warn claim, plaintiff must also show that the product was defective or hazardous. MAI 25.09 (West 2002). Finally, to recover on a wrongful death and survival claim, plaintiff needs to demonstrate that the defendants negligent actions resulted in plaintiff's death. MAI 20.01 (West 2002).

In Pro Service Automotive L.L.C., the Court stated:

> Missouri law requires the Plaintiffs to offer sufficient evidence to support every element of each of their claims. . . . The finding of a defect in a products liability case cannot rest on conjecture or speculation . . . Where a plaintiff is claiming that a design of a complicated piece of machinery is defective, expert testimony is appropriate.

Id. at *11 (internal citations omitted). See also, Shaffer v. Amada America Inc., 335 F.Supp.2d 992, 998 (E.D.Mo. 2003)("[Plaintiff] needs competent expert testimony to establish that this press brake is defective and unreasonably dangerous. Without expert testimony, we are left with evidence of an accident. The fact that an accident happened, standing alone, does not establish a case of product defect."); Fireman's Fund Insur. Co. v. Canon U.S.A. Inc., 394 F.3d 1054, 1060-61 (8th Cir. 2005)("Absent the excluded opinions of the fire causation experts, Travelers presented no evidence of any defect in the copier. Because Travelers cannot prove that a defect in the copier was the proximate cause of the fire, summary judgment for Canon was proper.").

In response to defendant's arguments, plaintiff reiterates his argument that Mr. Schoffstall's testimony regarding cause and origin is sufficient circumstantial evidence to allow the jury to infer that the Power Chair was the cause of the fire and was defective. Plaintiff again relies only on the outdated Fain case as support for this argument. The Court does not find this sufficient. As discussed above, the Court limited Mr. Schoffstall to only testifying about his report and his observations made during his inspection. Mr. Schoffstall's report contains nothing indicating that the Power Chair was the cause of the fire. In fact, he noted that the cause of the fire was undetermined. He recommended that the Power Chair be sent to a laboratory for testing, but he took no actions to accomplish this and conducted no further investigation regarding the chair. Therefore, as the Court has now limited Mr. Schoffstall's testimony,

plaintiff has no evidence that there was a defect in the chair. In fact, to the contrary, defendants' experts examined the chair and concluded that there was no defect in the Power Chair. Based on plaintiff's lack of evidence regarding a defect, the Court finds that defendants are entitled to summary judgment. Accordingly, the Court hereby **GRANTS** defendants' Motion for Summary Judgment (Doc. #81). As the Court has determined that defendants are entitled to summary judgment based on plaintiff's failure to prove a defect, there is no need to address the spoilation issue.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** plaintiff's Motion for Leave to File Suggestions in Opposition to the Motion to Strike Out of Time (Doc. # 73); **GRANTS IN PART and DENIES IN PART** defendants' Motion to Strike the Testimony of William L. Schoffstall (Doc. # 71). The Court hereby **GRANTS** defendants' Motion for Summary Judgment (Doc. # 81) and **DENIES** as **MOOT** defendant's Motion in Limine (Doc. # 111).

Date: February 7, 2006　　　　　　　　　　　　**S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　United States District Judge